

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
07/24/2009

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 09-30478-H4-11 |
| NE 40 PARTNERS, LTD., | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |
| | § | |

| | | |
|---|---|---|
| AIRPORT BOULEVARD | § | |
| APARTMENTS, LTD., | § | |
| | § | |
| Plaintiff, | § | Adversary No. 09-03057 |
| v. | § | |
| | § | |
| NE 40 PARTNERS, LIMITED | § | |
| PARTNERSHIP, et al. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION ON: (I) DEFENDANT JOHN VATISTAS'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; AND (II) PLAINTIFF'S EXPEDITED MOTION TO EXTEND TIME TO RESPOND TO DEFENDANT JOHN VATISTAS'S RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND REQUEST FOR DISCOVERY ON PERSONAL JURISDICTION ISSUES**
[Adv. Docket Nos. 59 & 70]

### I. INTRODUCTION

The crux of the Plaintiff's complaint (the Complaint) in the suit at bar is that Raymond Tiedje (Tiedje) orchestrated a scheme to defraud the Plaintiff out of funds that it invested in the construction of a sewer line. The majority of the defendants are entities Tiedje controls, the only exception being John Vatistas (Vatistas or the Defendant), an Arizona resident with a five percent share in one of Tiedje's corporations.

The suit at bar concerns an escrow agreement between the Plaintiff and Nebcan 40, Inc.

(NE 40), a corporation Tiedje controls, for the payment of the costs of installing and constructing an upgraded sewer line, which the City of Houston (the City) required the parties to install. At the time the escrow agreement was entered into, the City had a program whereby it reimbursed contractors for most or all of the cost of building certain kinds of infrastructure, including the sewer line in question. The Plaintiff entered into the escrow agreement believing that Tiedje would make a good faith effort to secure such reimbursement, which would then be used to repay the Plaintiff's $500,000.00 contribution. The sewer was constructed using the escrowed money, and Airport/288 Associates, Ltd. (Airport/288), another entity Tiedje controls, applied for the reimbursement. The City eventually remitted $680,416.00 to Airport/288, but the Plaintiff has yet to receive any share of the reimbursement.

The Plaintiff alleges that: (1) Tiedje never intended to reimburse the Plaintiff; and (2) in an effort to avoid repaying the Plaintiff, Tiedje fraudulently transferred the funds among the other defendants named in this suit—all of which, except Vatistas, were entities Tiedje controlled. Among those transfers was a $250,000.00 payment from Millennium Development Corp. (MDC), a Texas corporation that Tiedje controls, to Vatistas. The Plaintiff asserts that Vatistas knew the origin of the funds he received, and because he accepted the transfer, he is a party to the alleged fraud.

## II. PROCEDURAL BACKGROUND

On May 21, 2009, Vatistas filed a Motion to Dismiss Plaintiff's Third Amended Complaint (the Motion to Dismiss). [Adv. Docket No. 59.] The Motion to Dismiss seeks to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, alternatively, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim upon which relief may be granted.[1] Asserting that Vatistas refused to respond to discovery requests, on June 8, 2009, the Plaintiff filed a Motion to Extend Time to Respond to the Rule 12(b)(2) Portion of Vatistas's Motion and Compel Discovery on the Issue of Personal Jurisdiction (the Motion to Extend). [Adv. Docket No. 70.] On June 9, 2009, the Plaintiff filed its Response to the Defendant's Motion to Dismiss (the Plaintiff's Response). [Adv. Docket No. 74.] Additionally, on June 9, 2009, Vatistas filed a Response to the Plaintiff's Motion to Extend (Vatistas's Response). [Adv. Docket No. 75.] On June 12, 2009, the Plaintiff filed a Response to Vatistas's Response (the Plaintiff's Final Response). [Adv. Docket No. 81.]

As discussed below, the Court concludes that it has personal jurisdiction over Vatistas and, accordingly, denies the Rule 12(b)(2) portion of the Motion to Dismiss. Therefore, the Motion to Extend is moot.

The Rule 12(b)(6) portion of the Motion to Dismiss addresses six of the eleven counts in the Complaint.[2] Count One relates to common law fraud. Count Two relates to breach of fiduciary duty. Count Three relates to a fraudulent transfer. Count Four relates to civil conspiracy. Count Five relates to civil theft. Count Six relates to the imposition of a constructive trust. This Court will first address the Rule 12(b)(2) portion of the Motion to Dismiss and will then address whether any or all of the six counts should be dismissed pursuant to Rule 12(b)(6).

## III. ANALYSIS

### A.     Subject Matter Jurisdiction and Venue

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a).  This particular dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re*

---

[1] Federal Rule of Bankruptcy Procedure 7012(b) applies Federal Rule of Civil Procedure 12(b) to adversary proceedings in bankruptcy court. Fed. R. Bankr. P. 7012(b).

*Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther Trusts*, No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that an "Adversary Proceeding is a core proceeding under 28 U.S.C. § 157(b)(2) even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1409.

**B.     The Rule 12(b)(2) portion of the Motion to Dismiss must be denied because this Court has nationwide personal jurisdiction.**

Typically, a federal district court has personal jurisdiction over a defendant only if that defendant has "minimum contacts" with the court's forum state. *See Intl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). When a federal court's jurisdiction is challenged, "the plaintiff bears the burden of establishing the court's personal jurisdiction over the nonresident Defendant." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995). The Defendant has filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), which applies to the bankruptcy courts through Federal Rule of Bankruptcy Procedure 7012(b). *See* Fed. R. Civ. P. 12(b)(2); Fed. R. Bankr. P. 7012.

While 12(b)(2) motions may be brought in bankruptcy court, the "minimum contacts" inquiry established in *International Shoe* does *not* apply in the same fashion. Bankruptcy Rule 7004(d) provides for nationwide service of process in adversary proceedings arising under Title 11 of the United States Code. Fed. R. Bankr. P. 7004(d). According to Bankruptcy Rule 7004(f), serving a summons in accordance with the other subsections of Bankruptcy Rule 7004 is sufficient to establish personal jurisdiction over a defendant in an adversary proceeding if

---

[2] The other five counts alleged in the Complaint are not alleged against Vatistas.

personal jurisdiction is "consistent with the Constitution and laws of the United States." Fed. R. Bankr. P. 7004(f). In *Busch v. Buchman, Buchman & O'Brien, Law Firm*, the Fifth Circuit held that "[w]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." 11 F.3d 1255, 1258 (5th Cir. 1994). Because Rule 7004(d) provides for nationwide service of process, the bankruptcy courts have personal jurisdiction over defendants that have minimum contacts with the United States—and not solely the forum state. *See id.*

Although Federal Rule of Bankruptcy Procedure 7004 is a procedural rule rather than a statute, courts have repeatedly interpreted that rule to endow bankruptcy courts with nationwide personal jurisdiction. *See In re Enron Corp.*, 317 B.R. 701, 703 (Bankr. S.D. Tex. 2004); *In re North*, 279 B.R. 845, 851 (Bankr. D. Ariz. 2002) (holding that the "'national contacts' test is generally applicable to adversary proceedings in bankruptcy court); *In re Charter Oil Co.*, 189 B.R. 527, 529-31 (Bankr. M.D. Fla. 1995). Accordingly, when determining whether this Court has personal jurisdiction over the Defendant, the question is not whether he has minimum contacts with the state of Texas; rather, the question is whether he has *minimum contacts with the United States*, which, as an Arizona resident, he clearly does. *See id.* Therefore, this Court concludes that it has personal jurisdiction over Vatistas, and thus, the Defendant's 12(b)(2) motion to dismiss is denied. The Motion to Extend and the Responses thereto are thereby rendered moot, and this Court need not consider them.

**C.      The Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b) should be denied in its entirety.**

"Motions to dismiss are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005) (quoting *Shipp v. McMahon*, 199 F.3d

256, 260 (5th Cir. 2000). The complaint must therefore be liberally construed in favor of the plaintiff. *See Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). When evaluating a 12(b)(6) motion to dismiss, courts must accept all factual allegations in the complaint as true. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009). However, courts should not accept as true conclusory allegations or unwarranted deductions of fact. *See Milofsky v. Am. Airlines, Inc.*, 404 F.3d 338, 341 (5th Cir. 2005) (quoting *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003)).

The Plaintiff's Complaint need only satisfy the liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a) (Rule 8(a)), which requires merely a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to survive a 12(b)(6) motion. Fed. R. Civ. P. 8(a)(2). However, Federal Rule of Civil Procedure 9(b) heightens the pleading requirements for claims grounded in fraud, and mandates that the claimant must set forth the "who, what, when, where, and how" of the alleged fraud.[3] *See Dorsey v. Portfolio Equities*, 540 F.3d 333, 338-39 (5th Cir. 2008); *Hill v. Day (In re Today's Destiny)*, No. 06-3285, 2009 WL 1232108, at *6 (Bankr. S.D. Tex. May 01, 2009); *In re Kilroy*, 357 B.R. 411, 421 (Bankr. S.D. Tex. 2006). With these standards in mind, this Court will address each cause of action in turn.

### 1.  Count One – Common Law Fraud

The elements of common law fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the

---

[3] Federal Rule of Bankruptcy Procedure 7009 applies Federal Rule of Civil Procedure 9 to adversary proceedings in bankruptcy court. Fed. R. Bankr. P. 7009.

party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001).

The Plaintiff is required to plead common law fraud with particularity in accordance with Rule 9(b).  However, Rule 9(b) specifically provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); *see also, e.g., Hill*, 2009 WL 1232108 at *6 (acknowledging that "[t]he Defendant's state of mind . . . may be generally averred" (citing *Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 723 (S.D. Tex. 2003))).  "Although scienter may be 'averred generally,' case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud."  *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994); *see also Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir.1992) ("The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that makes it reasonable to believe that defendant knew that a statement was materially false or misleading.") (emphasis in orginal); *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir.) ("Although Rule 9(b) does not require 'particularity' with respect to the defendants' mental state, the complaint must still afford a basis for believing that plaintiffs could prove scienter.").  Thus, a plaintiff's general allegation that a defendant acted knowingly must be accompanied by some factual allegation that supports a reasonable inference that the defendant did, in fact, act knowingly.

The Defendant argues that because he has never had direct dealings with the Plaintiff, the Plaintiff may not prevail on its common law fraud claim against Vatistas. According to the Defendant, Vatistas himself must have made a fraudulent representation directly to the Plaintiff

in order to incur liability for fraud.[4]  This interpretation is unreasonably narrow. The standard set forth by the Texas Supreme Court in *FirstMerit Bank* requires only that "a material misrepresentation *was made*," not that *each and every defendant* made a material misrepresentation to the Plaintiff. *See In re FirstMerit Bank*, 52 S.W.3d at 758 (emphasis added). Indeed, Texas courts recognize a third-party cause of action for fraud where a defendant had knowledge of the material misrepresentations and profited thereby. *See, e.g., Corpus Christi Area Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 198-99 (Tex. App.—San Antonio 1991, no writ) ("Our courts have uniformly held that, where a party, through fraud, obtains title to land, all those who participated therein or who received benefits therefrom are liable in damages to the party defrauded."). The Defendant's characterization of the elements of common law fraud is thus improper. While Rule 9(b) does require the Plaintiff to plead the elements of fraud with particularity, this requirement applies only with respect to the individual who allegedly made the fraudulent representation—in this case, Tiedje.

The Plaintiff has certainly pleaded with particularity that Tiedje has committed common law fraud.  The Plaintiff has specifically alleged that Tiedje harbored a grudge against the Plaintiff "for getting  Teidje, NE 40, and Airport/288 to agree that they would request the Oakmoor Property could be removed from MUD 404" and based on the "Plaintiff's insistence that the Utility Line be constructed in time for Plaintiff's apartment complex to open." [Adv. Docket No. 49, ¶ 73 & 74.]  Based on these specific factual allegations, the Plaintiff alleges that

---

[4] This Court will apply Texas law in accordance with the parties' decision to do so in the escrow agreement giving rise to the dispute at bar. *See* [Docket No. 49, Exhibit 1]; *see also Int'l Interests, L.P. v. Hardy*, 448 F.3d 303, 306 (5th Cir. 2006) (recognizing that "a federal court must follow the choice of law rules of the forum state" and that "[t]he Supreme Court of Texas has recognized that contractual choice of law provisions should generally be enforced"). Additionally, Texas law applies to the dispute at bar because the dispute arose in connection with the Plaintiff and Tiedje's joint venture to construct sewer lines in the state of Texas and because this suit involves the ownership of funds disbursed by the City of Houston, Texas. *Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829, 838 (S.D. Tex. 1993) ("[T]he rights and duties of the parties are determined by the local law of the state or country that has the most significant relationship to the transaction and the parties.").

Tiedje "form[ed] an intention, prior to the execution of the Escrow Agreement, not to pay Plaintiff the full $500,000.00, if anything, when the City Cost Reimbursement was received." [Adv. Docket No. 49, ¶ 75.] The Plaintiff has also pleaded with particularity the material representations that were allegedly made by Tiedje. Specifically, the Plaintiff alleges that Tiedje represented to the Plaintiff "that Plaintiff would receive all or part of the $500,000.00 from the City Cost Reimbursement, in order to induce Plaintiff not to take any action to contact the City to ensure that the funds would not be released without Plaintiff being paid," and that "Tiedje falsely represented that he had not decided what to do with the money received from the City, when in fact, he had already begun transferring the money from Airport/288 to MDC, and then to other Defendants." [Adv. Docket No. 49, ¶ 76.] These allegations are sufficient to satisfy Rule 9(b)'s requirement that the Complaint set forth particular facts that give rise to the Plaintiff's common law fraud claim.

Third-party common law fraud liability is based on a defendant's knowing participation in a fraudulent scheme. *See, e.g., Crisp v. Sw. Bancshares Leasing Co.*, 586 S.W.2d 610, 615 (Tex. Civ. App.—Amarillo 1979, writ ref'd n.r.e.) ("[A]ll who participate are liable for the fraud, . . . irrespective of proof that they shared in the profits, for the gravamen of the action is injury to plaintiff and not benefit to defendant."). Indeed, in Texas, third-party fraud liability may be incurred through "silent acquiescence for the fraudulent misrepresentations of a third party." *Corpus Christi Area Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 198 (Tex. App.— San Antonio 1991, no writ); *see also Healthcare Corp. v. Cottey*, 72 S.W.3d 735, 745 (Tex. App.—Waco 2002, no pet.) ("slight circumstantial evidence of fraud, when considered with the breach of a promise to perform, is sufficient to support a finding of fraudulent intent."). The Plaintiff's common law fraud case against Vatistas hinges on Vatistas's knowledge of *Tiedje's*

alleged fraud—the facts of which, as discussed above, have been alleged with particularity. Thus, based on the relaxed standard for pleading a defendant's state of mind under Rule 9(b), the Plaintiff's Complaint need only allege facts that may allow the Court to *reasonably infer* that Vatistas had knowledge of the alleged fraud to pass muster under Rule 9(b). *See Tuchman*, 14 F.3d at 1068-69.

This Court concludes that the Plaintiffs allegation that Vatistas is an "insider" satisfies the Plaintiff's burden of alleging a fact from which this Court may reasonably infer that Vatistas had the requisite knowledge to support a viable claim for third-party common law fraud. When determining whether an individual is an insider,[5] courts have generally focused on "(1) the closeness of the relationship between the transferee and the debtor; and (2) whether the transactions between the transferee and the debtor were conducted at arm's length." *Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008, 1010-11 (5th Cir. 1992) (citing cases). The Court finds that the Plaintiff has alleged sufficient facts which, if taken as true, suggest (1) that Vatistas and Tiedje had a close relationship, and (2) that the transaction between them was not conducted at arm's length. Additionally, the Plaintiff has alleged that Vatistas actually knew the source of the funds it received. This allegation is supported by Tiedje's testimony at a prior hearing held on April 3, 2009, that Vatistas and he were "partners" in various joint ventures and that Vatistas accepted the $250,000.00 from Tiedje as payment on a note that had not yet come due.[6] Tiedje has also admitted in a written notice filed in another bankruptcy case pending

---

[5] The Texas Uniform Fraudulent Transfer Act (TUFTA) provides four categories of people who qualify as an "insiders." Tex. Bus. Com. Code §24.002(7). If the debtor is an individual, insiders may include "(i) a relative of the debtor or of a general partner of the debtor; (ii) a partnership in which the debtor is a general partner; (iii) a general partner in a partnership described in Subparagraph (ii) of this paragraph; or (iv) a corporation of which the debtor is a director, officer, or person in control." *Id.* While the list seems to immediately exclude Vatistas, courts have held that the requirements outlined in the TUFTA are illustrative, not exclusive. *See Browning Interests*, 955 F.2d at 1010-11.

[6] While the Plaintiff has not made any such allegations in its Complaint, this Court may properly take into account

before this Court, that he provided Vatistas with a 5% ownership interest in one of Tiedje's various entites as a "kicker" based on the fact that Vatistas has been Tiedje's private lender for approximately twenty years. Specifically, Tiedje admitted that "Mr. Vatistas has been a private lender to me for almost 20 years. To the best of my recollection, any and all ownership interest held by Mr. Vatistas have been in the form of a 'kicker' or a 'lender enhancement', based on loans to the particular entity(s)."[7] [Case No. 09-32395, Docket No. 63, Ex. 1.] Based upon these admissions, the Court has difficulty accepting the Defendant's argument that Vatistas accepted $250,000.00 without knowing—or, at the very least, inquiring about—the source of the premature payment. The Plaintiff's allegation that Vatistas is an insider with actual knowledge of the agreement between Tiedje and the Plaintiff is sufficient to support a reasonable inference that Vatistas was a party to Tiedje's alleged fraud.

Therefore, because the Plaintiff has pleaded with particularity that Tiedje made a material misrepresentation to the Plaintiff, and because the Plaintiff has alleged facts that, if true, are sufficient to support the Plaintiff's third-party common law fraud claim against Vatistas, the Motion to Dismiss should be denied as to Count One.

## 2. Count Two – Breach of Fiduciary Duty

Rule 9(b) generally "does not extend to claims of breach of fiduciary duty." *United States v. Rivieccio*, 661 F. Supp. 281, 290 (E.D.N.Y. 1987) (emphasis added); *see also Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995) ("[W]e have never applied Rule 9(b) in cases in

---

admissions made by Tiedje in prior hearings when ruling on the Motion to Dismiss. *See, e.g.*, *Credit Alliance Corp. v. Idaho Asphalt Supply, Inc. (In re Blumer)*, 95 B.R. 143, 146 (B.A.P. 9th Cir. 1988) (acknowledging that "a bankruptcy judge may, but need not, consider evidence from a prior hearing in the same case").

[7] This Court may properly consider Tiedje's written filing in another bankruptcy case pending before this Court because such a filing is public record, of which this Court may properly take judicial notice. *See, e.g.*, *Missionary Baptist*, 712 F.2d 206, 211 (5th Cir. 1983) ("A court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom."); *Faulkner v. Kornman (In re Heritage Organization, L.L.C.)*, No. 06-3377-BJH, 2008 WL 5215688, at *26 n.25 (Bankr. N.D. Tex. Dec. 12, 2008) ("This Court may sua sponte take judicial notice of information in the docket . . . ."); *Frascogna v. Security Check, LLC*, No. 3:07cv686

which the plaintiffs allege a breach of fiduciary duty but do not allege fraud."); *United States v. Kearns*, 595 F.2d 729, 733 n.18 (D.C. Cir. 1978) ("We note . . . that the claim of breach of fiduciary duty would not appear to be a matter of fraud covered by [Rule 9(b)]. . . ."). "Allegations of breach of fiduciary duty are not necessarily fraud allegations." *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 672 (E.D. Tex. 2004) (emphasis added). "However, courts have applied the heightened pleading standards of Rule 9(b) to . . . breach of fiduciary duty claims that are predicated on fraudulent conduct." *In re Westar Energy, Inc. ERISA Litig.*, No. 03-4032-JAR, 2005 WL 2403832, at *4 (D. Kan. Sept. 29, 2005); *see also Tigue Inv. Co. v. Chase Bank of Texas, N.A.*, No. Civ. A.3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004). "In such cases, particularity is only required to the extent that a plaintiff in fact alleges fraud." *Tigue Inv. Co.,* 2004 WL 3170789, at *2.

Here, the claim for breach of fiduciary duty brought by the Plaintiff is not predicated on fraud; rather, it is predicated on the fiduciary duty that Tieje allegedly owed to the Plaintiff arising out of their escrow agreement concerning their joint endeavor. "Joint venturers owe each other a duty of utmost good faith and scrupulous honesty in their mutual endeavor." *Deauville Corp. v. Federated Dept. Stores, Inc.*, 756 F.2d 1183, 1194 (5th Cir. 1985) (citing *Fitz-Gerald v. Hull*, 237 S.W.2d 256 (Tex. 1951)). The Plaintiff has alleged that "the Escrow Agreement was also a trust agreement between the Plaintiff and NE 40" and that "[t]he Escrow Agreement was also a joint venture between Plaintiff, NE 40 and Airport/288 to provide financing for construction of the Utility Line, in addition to other factual allegations which, if taken as true, would place the Plaintiff and NE 40 in a partnership arrangement which, as a matter of law, gives rise to a fiduciary duty. [Adv. Docket No. 49, ¶ 83 & 84.] Thus, the Plaintiff's breach of fiduciary duty claim does not fall within the ambit of Rule 9(b) and is, instead, subject to the

---

DPJ-JCS, 2009 WL 57102, at *4 n.3 (S.D. Miss. Jan. 7, 2009) ("The Court may take judicial notice of its docket.").

liberal pleading standard set forth in Rule 8(a)(2).  The Plaintiff has satisfied this standard by providing a short and plain statement of its claim against Vatistas.

However, to the extent that the Plaintiff's breach of fiduciary duty claim is grounded in fraud, this Court concludes that the Plaintiff has sufficiently pleaded facts in support of its fiduciary duty claim against Vatistas to satisfy Rule 9(b)'s more stringent pleading requirements.

First, the Defendant's argument that none of the defendants owed the Plaintiff a fiduciary duty is unavailing. The Defendant himself admits that "Vatistas is not privy to the relationship between the Plaintiff and NE 40 [one of the other the Defendants] and *does not attempt to dispute [the existence of a fiduciary duty] at this point.*" [Adv. Docket No. 59, ¶ 32.] The Defendant may not argue that no defendant owed the Plaintiff a fiduciary duty but then admit that he is unable to conclusively contradict the Plaintiff's assertion to the contrary.

Second, the Defendant's argument that the Plaintiff has failed to plead particular facts to state a claim for breach of fiduciary duty against Vatistas is also without merit. "It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 863 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Thus, the Plaintiff's breach of fiduciary duty claim hinges on the same question as did the common law fraud claim: did the Defendant have knowledge of the alleged fraudulent scheme out of which the alleged fiduciary duty arose? As discussed above, *supra* Part III.C.1, the Plaintiff has alleged sufficient facts to allow this Court to draw a reasonable inference that Vatistas had knowledge of Tiedje's alleged fraud. *See Tuchman*, 14 F.3d at 1068-69. The Plaintiff has alleged that Vatistas is an insider and that Vatistas had actual knowledge of the source of the funds transferred to him.

Additionally, Tiedje has admitted to his longstanding and very close professional and business relationship with Vatistas. Accordingly, the Motion to Dismiss should be denied as to Count Two.

### 3.   Count Three – Fraudulent Transfer[8]

The Defendant first argues that no fraudulent transfer claim may be brought against him under the Texas Uniform Fraudulent Transfer Act (TUFTA) because there is no debtor-creditor relationship between the Plaintiff and Vatistas. While it is true that only creditors may bring a fraudulent transfer claim under the TUFTA, it is the *transferor*, not the transferee, who must be indebted to the plaintiff. *See* Tex. Bus. & Com. Code § 24.005. Here, the Complaint specifically alleges that Tiedje was indebted to the Plaintiff when he conveyed the $250,000.00 to Vatistas. Accordingly, the Defendant's first argument has no merit.

The Defendant's other arguments are predicated on his assertion that Rule 9(b) applies to claims arising under TUFTA. "Rule 9(b)'s application is not limited to pure fraud claims. Rather, Rule 9(b) applies to any averment of fraud within a claim that has a fraud-based element." *Hill*, 2009 WL 1232108, at *6 (citing *Lone Star Ladies Inc. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368-69 (5th Cir. 2001)). The Defendant claims that because fraudulent transfer claims are inherently based on fraud, Rule 9(b) applies. This Court agrees with the Defendant's ultimate conclusion that Rule 9(b) does apply to the fraudulent transfer claim in the suit at bar; however,

---

[8] At a hearing held on July 20, 2009, the Plaintiff's counsel acknowledged that Ben B. Floyd, the newly appointed Chapter 11 Trustee, will take over this particular claim as he, and only he, has standing to pursue this claim on behalf of the Plaintiff's Chapter 11 estate. *See, e.g., In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983) (acknowledging that Congress's passing of the Bankruptcy Code did not change the fact that "an action based on such a fraudulent transfer [is] vested in the trustee" (internal marks and citations omitted)). Indeed, the Fifth Circuit has held that "a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008). Based upon the representations of Mr. Floyd's counsel at a hearing held on July 20, 2009, this Court presumes that the Trustee will be intervening to prosecute the causes of action belonging to the estate.

the Court disagrees with the Defendant's blanket assertion that Rule 9(b) is applicable to all TUFTA claims.[9]

Given that Rule 9(b) applies to the TUFTA claim at issue, the Defendant argues that the Plaintiff's fraudulent transfer claim does not allege facts sufficient to establish the "who, what, when, where, and how" of the fraudulent act. The Defendant asserts that because the Plaintiff repeatedly lumps him in with "the other the Defendants," the Plaintiff has not pleaded the TUFTA allegation with sufficient particularity. Rule 9(b) exists to ensure that the Defendants have notice of the precise act or conduct that is being questioned as fraudulent so they have ample opportunity to defend their good name. *Sharp v. Chase Manhattan Bank, N.A. (In re Commercial Fin. Servs., Inc.)*, 322 B.R. 440, 450-51 (Bankr. N.D. Okla. 2003). The Plaintiff has provided a table of payments, including the dates of all the transfers, the amounts, and the payees. The Vatistas transfer is on the list. The Plaintiff has therefore established Vatistas's identity, his location, and his connection to Tiedje. The Court finds that these facts are sufficient to establish "who, what, when, where, and how" and to tender notice of the precise transaction over which the Defendant is being sued.

The Defendant also argues that the Plaintiff has failed to establish that the transfer was not for reasonably equivalent value as required by § 24.005(2) of TUFTA. Either of the following assertions made in the Plaintiff's complaint, if true, would be fatal to the Defendant's

---

[9] The Defendant misconstrues the courts' consensus on the applicability of Rule 9(b) to fraudulent transfer claims. None of the cases the Defendant cites stands for the proposition that Rule 9(b) universally applies to claims arising under the TUFTA. *See Brunswick Corp. v. Vineberg*, 370 F.2d 605, 608-09 (5th Cir. 1967); *In re Sharp Intern Corp.*, 403 F.3d 43, 56 (2d Cir. 2005); *Gen. Elec. Capital Corp. v. Lease ADR Corp.*, 128 F.3d 1074, 1078-79 (7th Cir. 1997). The actual position of most courts is that Rule 9(b) should be applied to claims of intentional fraud but *not* claims of constructive fraud. *See id.* Some courts have held that 9(b) is applicable to TUFTA claims of constructive fraud, *see, e.g., In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr. D. Del. 2005), *In re Chochos*, 325 B.R. 780, 783 (Bankr. N.D. Ind. 2005), but federal courts in Texas have generally restricted applicability to claims of intentional conduct. *See, e.g., Alexander v. Holden Business Forms, Inc.*, No. Civ.A. 4:08-CV-614-Y, 2009 WL 1406242, at *2 (N.D. Tex. May 20, 2009); *Ind. Bell Tel. Co., Inc. v. Lovelady*, No. SA-05-CA-285-RF, 2006 WL 485305, at *1 (W.D. Tex. Jan. 11, 2006). As the fraudulent transfer claim in the suit at bar does allege actual intent, Rule 9(b) applies.

argument: (1) Vatistas was an insider (statement one); or (2) the transfers Tiedje made to the other the Defendants were not in the ordinary course of business (statement two). As discussed above, the Plaintiff has sufficiently alleged facts to support, and Tiedje has essentially admitted to, statement one. Thus, the Plaintiffs have pleaded its fraudulent transfer claims with sufficient particularity to satisfy Rule 9(b) and the Motion to Dismiss should be denied as to Count Three.

4.      **Count Four – Civil Conspiracy**

Civil conspiracy involves two or more entities working together to orchestrate an unlawful act that damages one or more separate parties. The Fifth Circuit has recognized that a civil conspiracy to commit a tort that sounds in fraud must be pleaded with particularity in accordance with Rule 9(b). *See Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 961 (5th Cir. 1994). In the suit at bar, the Plaintiff claims that Tiedje and Vatistas were co-conspirators in an alleged scheme to defraud the Plaintiff out of the reimbursement funds. Thus, the Plaintiff's civil conspiracy claim is grounded in fraud and must be pleaded with particularity pursuant to Rule 9(b). However, even though Rule 9(b) applies to the Plaintiff's civil conspiracy claim, "Rule 9(b) does not work to penalize a plaintiff merely because he was not privy to, and, therefore, cannot plead the details of, the inner workings of a group of defendants who allegedly acted in concert to defraud him." *Kravetz v. Brukenfeld*, No. 83 Civ. 5357 (GLG), 1984 WL 2443, at *3 n.9 (S.D.N.Y. June 29, 1984) (citing *Robertson v. Nat'l Basketball Ass'n*, 67 F.R.D. 691, 698 (S.D.N.Y. 1975)). Rather, allegations supporting a claim for conspiracy to defraud need only be particular enough to give the defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir. 1978).

The Defendant argues that the complaint fails to allege three elements of a claim of civil conspiracy: (1) an unlawful act to be accomplished between Vatistas and any other person

(argument one); (2) a meeting of the minds on such unlawful object (argument two); or (3) any unlawful act whatsoever involving Vatistas (argument three).

The first question raised by argument one is whether the Plaintiff adequately identified the unlawful act or acts that he alleges Vatistas and Tiedje conspired to commit. The Plaintiff's Response points to ¶ 134 of the Complaint, which states, "[t]he conspiracy of these the Defendants was to accomplish an unlawful, overt act, i.e. defraud the Plaintiff and fraudulently transfer the funds that belong to the Plaintiff." This Court has already concluded that the Plaintiff pleaded with particularity the unlawful acts the Defendant allegedly conspired to commit—namely, the scheme to defraud the Plaintiff and the $250,000.00 fraudulent transfer. Therefore, the answer to the first question is in the affirmative.

The second question raised by argument one is whether the unlawful act was orchestrated by two or more persons. The Plaintiff repeatedly pleads in the Complaint that Tiedje and Vatistas worked together to defraud him. However, a civil conspiracy charge may only be brought when the two or more persons are each distinct entities. *Hinojosa v. Guidant Corp.*, No. C.A. C-05-399, 2005 WL 2177212, at *4-5 (S.D. Tex. Sept. 7, 2005). Parent and subsidiary corporations, for example, are sometimes considered indistinguishably integrated, as are employers and employees. *Id.* The Plaintiff argues in its Response that because Vatistas is only an alleged lender and minor investor with some of the entities Tiedje controls, the two persons are sufficiently distinct.[10] This Court agrees. Accordingly, this Court concludes that argument one is without merit.

Argument two is also without merit. The Defendant disputes that the Plaintiff's contention that there was a "meeting of the minds" between Tiedje and Vatistas is insufficient to

---

[10] The fact that the Plaintiff has alleged that Vatistas is an insider does not necessarily mean that Vatistas is not separate and distinct from Tiedje.

satisfy Rule 9(b)'s pleading requirements.  This Court agrees that in order for a "meeting of the minds" to have occurred between two parties, each must have knowledge of the other's allegedly unlawful activities. *See Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996) (holding that a party "cannot agree . . . to commit a wrong about which he has no knowledge"); *Laxson v. Giddens*, 48 S.W.3d 408, 410 (Tex. App.—Waco 2001, reh'g overruled) (holding that "meeting of the minds" requires knowledge of the course of action).  However, as discussed above, *see infra* Part III.C.1, Rule 9(b) creates a relaxed standard for pleading a party's mental state and the Plaintiff need only allege facts sufficient to support a reasonable inference that Vatistas harbored the requisite mental state for civil conspiracy.  Here, the Court has already concluded that the Plaintiff has satisfied the standard for pleading Vatistas's mental state pursuant to Rule 9(b).  The Plaintiff specifically pleaded that Vatistas had knowledge of the source of the $250,000.00 payment and that Vatistas is an insider.  Indeed, this latter allegation is supported by Tiedje's written stipulation discussed *supra* Part III.C.2.  Therefore, argument two also fails.

Argument three—that the Plaintiff failed to allege that Defendant engaged in any unlawful act—also fails.  Rule 9(b)'s heightened pleading standard does not apply to this particular inquiry; the question is merely whether the Plaintiff has made some allegation that the Defendant engaged in an unlawful act, regardless of whether such an allegation is supported by facts.  Here, the Plaintiff has done so. The Complaint specifically alleges that Vatistas was complicit in Tiedje's scheme to defraud the Plaintiff.  Thus, the Plaintiff has, in fact, alleged that the Defendant has engaged in an unlawful act and the Defendant's argument three is without merit.

In sum, the Motion to Dismiss should be denied as to Count Four.

5.      **Count Five – Civil Theft**

Rule 9(b) generally does not apply to claims of civil theft; but rather only to claims of theft by deception. *See, e.g., Germaine Music v. Universal Songs of Polygram*, 275 F. Supp. 2d 1288, 1304 (D. Nev. 2003) (determining that claims for civil theft by deception are generally subject to Rule 9(b)'s heightened pleading standard because such claims are grounded in fraud); *Brown v. Kerkhoff*, 504 F. Supp. 2d. 464, 530 (S.D. Iowa 2007) (same). Here, the Plaintiff has alleged that Vatistas "participated in the fraudulent and unlawful receipt, appropriation, transfer, disbursement and/or retention of monies rightfully and lawfully belonging to Plaintiff." [Adv. Docket No. 49, ¶ 137.] More specifically, the Plaintiff has alleged that Vatistas committed civil theft pursuant to the Texas Civil Practice and Remedies Code Chapter 134. *See* Tex. Civ. Prac. & Rem. Code § 134.[11] Because this allegation does not amount to a claim for theft by deception, but, instead, is a typical cause of action for generic civil theft, the claim is subject to the liberal pleading standard set forth in Rule 8(a)(2) and the allegations quoted above satisfy that standard.

However, even if the heightened pleading standard set forth in Rule 9(b) does apply to the Plaintiff's civil theft claim, the Court concludes that the Complaint sets forth sufficient facts to satisfy Rule 9(b)'s standards.   The Plaintiff pleaded five specific facts that support its contention that Vatistas intended to commit civil theft: (1) the transfers to Vatistas were not in the ordinary course of business; (2) Vatistas was aware that the source of the funds was the City cost reimbursement; (3) Vatistas was aware of the financial struggles of the Airport Boulevard Estates when he received the transfer; (4) Vatistas was an insider; and (5) Vatistas actively participated in the fraud, the breach of fiduciary duty, and in the civil conspiracy. Though some of these "facts" are more akin to legal conclusions (specifically, fact 5), this Court nonetheless

---

[11] Section 134.002 of the Texas Civil Practice and Remedies Code defines theft as unlawfully obtaining property as described by Chapter 31 of the Texas Penal Code. Intent is a material element of criminal theft, and thus, it is an

concludes that facts 2, 3, and 4—the last of which is supported by Tiedje's own admission—sufficiently allege that Vatistas was a party to civil theft. Accordingly, the Motion to Dismiss should be denied as to Count Five.

6.    **Count Six – Imposition of a Constructive Trust**

The imposition of a constructive trust is an available remedy where there has been a showing of actual fraud or breach of fiduciary duty. *See, e.g.*, *Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex. 1974) ("Actual fraud, as well as breach of a confidential relationship, justifies the imposition of a constructive trust."). The Plaintiff has sought to impose a constructive trust based on the Defendant's alleged fraudulent conduct *and* based on the Defendant's alleged breach of fiduciary duty. [Adv. Docket No. 49, ¶ 108 & 109.] Thus, to the extent that the Plaintiff's constructive trust theory of recovery is grounded in fraud, it must be plead with particularity pursuant to Rule 9(b), but to the extent that its constructive trust theory is grounded in breach of fiduciary duty, the Plaintiffs allegations need only satisfy Rule 8(a)(2)'s liberal pleading standard. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 621 (D.N.J. 1996) (determining that a plaintiff's constructive trust claim that "relies on essentially the same factual allegations that its fraud claims rest upon" is subject to the heightened pleading standard set forth in Rule 9(b)).

This Court has already concluded that the Plaintiff has sufficiently pleaded its cause of action for common law fraud as to Vatistas in accordance with Rule 9(b). *See supra* Part III.C.1. Additionally, this Court has also concluded that the Plaintiff has sufficiently pleaded its claim for breach of fiduciary duty in accordance with Rule 8(a)(2), and (to the extent that particular claim is grounded in fraud) Rule 9(b). *See supra* Part III.C.2. Thus, the Plaintiff's request for the imposition of a constructive trust withstands both the heightened pleading standard of Rule 9(b)

---

element of the criminal offense's civil equivalent. *See* TePen. Code §§ 31.07 & 31.03.

and the liberal pleading standard of Rule 8(a)(2).   As such, the Motion to Dismiss should be denied as to Count Six.

### IV. CONCLUSION

For the reasons set forth above, the Motion to Dismiss should be denied in its entirety and the Motion to Extend should be dismissed as moot.   An order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Memorandum Opinion.

Signed on this 24th day of July, 2009.

Jeff Bohm
United States Bankruptcy Judge